```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA


J.G. AND L.G., AS PARENTS       :
AND NEAREST FRIENDS OF          : CIVIL ACTION
JEREMY G.,                      :
                                :
            PLAINTIFFS,         :
                                :
                                : NO. 08-CV-00734
                                :
      vs.                       :
                                :
ABINGTON SCHOOL DISTRICT,       :
                                :
            DEFENDANT.          :
```

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                           October 15, 2008

This case is before the Court for disposition of the parties' cross-motions for summary judgment on the administrative record. For the reasons which follow, we shall grant the defendant's motion and deny that of the plaintiffs.

**Factual Background**

Jeremy G. is a thirteen year old resident of Abington School District. Jeremy is a child of average intelligence and has been identified as in need of special education pursuant to the Individuals with Disabilities Education Act ("IDEA"). Specifically, Jeremy is identified as having a specific learning disability in reading and written expression and in other health impairment (Attention Deficit Hyperactivity Disorder ("ADHD")).

Jeremy transferred into the Abington School District ("District") as a kindergartner in 2001.

In 2006, at the end of Jeremy's fourth grade year, Jeremy's parents ("Parents") disagreed with the District's proposed Individualized Education Plan ("IEP") for the fifth grade year and thus filed for a due process hearing as permitted by section 1415(f) of the IDEA.  20 U.S.C. § 1415(f) (2000 & Supp. 2008). Parents and District resolved this claim through a settlement agreement dated June 27, 2006.  Pursuant to the settlement agreement, Jeremy transferred to the Quaker School at Horsham ("TQS") at the District's expense for his fifth grade year (2006-07).  The settlement agreement further determined that if Parents and District were unable to agree upon Jeremy's program or placement for any period from the first day of the 2007-2008 school year, Jeremy's pendent placement would be TQS for the first semester of the 2007-2008 school year and the placement offered by the District for the second semester of the 2007-2008 school year.

On April 30, 2007, the District issued a Revised Reevaluation Report ("Evaluation Report").[1]  The Evaluation Report incorporated a neuropsychological evaluation conducted by

---

[1] The Evaluation Report was first issued on April 12, 2007. It was revised and reissued on April 30, 2007 because of certain typographical errors on page five.  The rest of the Report remained unchanged.

a private neurologist, Dr. Kenneth Goldberg, an evaluation completed by Jeremy's mother, assessments completed through TQS, assessments completed through the District, observations done by the District's school psychologist and by the District's reading specialist, reports from Jeremy's teachers in various subjects, and assessments from the District's occupational therapist. Jeremy's IEP Team met on May 2, 2007 to discuss the proposed IEP for Jeremy and on May 4, 2007 the District sent Parents a copy of the IEP and of the Notice of Recommended Educational Placement ("NOREP"). After the IEP meeting, Parents continued to have questions concerning the Evaluation Report and IEP.

On May 25th, the District included in an email to Parents that if Parents did not respond to the NOREP by Monday, June 4, 2004, the District would request a Due Process Hearing to determine the appropriateness of the proposed program. In reply to the District's indication that they would request a due process hearing absent Parent's response to the NOREP, Parents requested a Pre-Hearing Conference to discuss their concerns with the IEP. On June 1, 2007, Parents completed the NOREP indicating that they did not approve the District's recommendation because it did not consider continuing Jeremy's placement at TQS. They also indicated their request for a Pre-hearing Conference, which was scheduled for June 15, 2007. On June 15, 2007, the District filed a Due Process Complaint Notice.

A Due Process Hearing was held in four sessions on July 30, August 13, September 12, and September 19, 2007. The Hearing Officer ("H.O.") found that the terms of the Settlement Agreement in regard to Jeremy's pendent placement should not be changed, that the burden of persuasion was on the parents to prove the inappropriateness of the IEP, and that the IEP and the recommended placement were appropriate. Parents appealed the issues of the burden of persuasion and the appropriateness of the IEP. The Pennsylvania Special Education Appeals Panel ("Appeals Panel") affirmed the H.O.'s decision on the appropriateness of the IEP, but refrained from deciding the burden of persuasion because they agreed that the IEP was "reasonably calculated to yield success." In re Educational Assignment of J.G., Spec. Educ. Op., No. 1853, at 4 (Pa. Spec. Educ. Appeals Panel, Nov 23, 2007). Pursuant to section 1415(i)(2) of the IDEA, Parents filed the instant civil action in this Court to challenge the decision of administrative proceedings on the burden of persuasion and the appropriateness of the IEP. Both the Parents and the District have now moved for summary judgment.

## Standard of Review

Summary judgment is appropriate where, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Michaels v. New Jersey, 222 F.3d

118, 121 (3d Cir. 2000); Jones v. School District of Philadelphia, 198 F.3d 403, 409 (3d Cir. 1999).  The IDEA affords District Courts jurisdiction to hear civil actions brought by parties aggrieved by decisions rendered by hearing officers from due process hearings and from appeals before the State educational agency without regard to the amount in controversy.  20 U.S.C. §1415(i)(2).  When deciding such a case, however, the District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings of the ALJ.  L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 (3d Cir. 2006).  Thus, the Court must "defer to the [Hearing Officer's] factual findings unless it can point to contrary non-testimonial extrinsic evidence on the record."  S.H. v. State Operated School District of Newark, 336 F.3d 260, 270 (3d Cir. 2003).  "'The Court is not, however, to substitute its own notions of sound educational policy for those of local school authorities.'"  S.H. v. State-Operated School District, 336 F.3d 260, 270 (3d Cir. 2003), quoting, MM v. School District of Greenville County, 303 F.3d 523, 530-31 (4th Cir. 2002).

## **Discussion**

As noted, Parents filed this suit alleging that the Hearing Officer ("H.O."), affirmed by the Appeals Panel, erred in assigning the burden of persuasion to Parents and in finding that the proposed IEP was appropriate for Jeremy.

The IDEA was designed to overcome the pattern of disregard and neglect disabled children historically encountered in seeking access to public education. Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, citing, *inter alia*, 20 U.S.C. §1400(c)(2) (congressional findings). The IDEA conditions a state's receipt of federal funds for special education programs on its implementation of "policies and procedures to ensure that ... a free appropriate public education is available to all children with disabilities..." Melissa S. by Karen S. v. School District of Pittsburgh, No. 05-1759, 183 Fed. Appx. 184, 186-187, 2006 U.S. App. LEXIS 14118 at *4 (3d Cir. June 8, 2006), quoting 20 U.S.C. §1412(a)(1)(A). "The term 'free appropriate public education' means special education and related services that - (A) have been provided at public expense, under public supervision and direction and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title." 20 U.S.C. §1401(9). The Third Circuit has otherwise described a free appropriate public education as consisting "of educational instruction specifically designed to meet the unique needs of the handicapped child, support by such services as are necessary to permit the child to

'benefit from the instruction.'"  Melissa S., supra., quoting W.B. v. Matula, 67 F.3d 484, 491 (3d Cir. 1995).

The "free appropriate public education" required by the Act is tailored to the unique needs of the handicapped child by means of an "individualized education program" or "IEP." Bd. of Educ. v. Rowley, 458 U.S. 176 (1982).  "The IEP consists of a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive." Melissa S., supra., quoting Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171, 173 (3d Cir. 1988).

In this case, the gravamen of Parents' complaint is that the H.O. and the Appeals Panel erred in finding that the IEP proposed by the District in May of 2007 for Jeremy's sixth grade year (i.e. 2007-08 school year) was appropriate.  The Parents first assert that the H.O. erred in assigning the burden of persuasion to them rather than to the District.  They then argue that, had the District bore the burden of persuasion, the District would have failed to meet that burden because the IEP failed to address adequately all of Jeremy's educational needs.

The issue of whether an IEP is appropriate is a question of fact.  S.H. v. State-Operated School District of Newark, 336 F.3d 260, 271 (3d Cir. 2003), citing Carlisle Area School District v.

Scott P., 62 F.3d 520, 526 (3d Cir. 1995).  An appropriate IEP does not need to provide for the best possible education but instead must be "reasonably calculated to enable the child to receive educational benefits."  Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982).  This requires more than just a *de minimis* educational benefit and mandates the undertaking of a student-by-student analysis that carefully considers the individual student's abilities.  Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 248 (3d Cir. 1999); Daniel S., at *10 citing M.C. v. Central Regional School District, 81 F.3d 389, 393 (3d Cir. 1996).  The proffered IEP must then provide for "significant learning and meaningful benefit."  Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999).

Whether an IEP is appropriate "can only be determined as of the time it is offered to the student, and not at some later date."  Fuhrmann v. East Hanover Bd. Of Educ., 993 F.2d 1031, 1040 (3d Cir. 1993).  Evidence acquired after the creation of the IEP should only be used to evaluate the reasonableness of a school district's decisions at the time they were made.  Susan N. v. Wilson Sch. Dist., 993 F.3d 751, 762 (3d Cir. 1995).  "Neither the statute nor reason countenance 'Monday Morning Quarterbacking' in evaluating the appropriateness of a child's placement."  Fuhrmann, 993 F.2d at 1040.

In support of their motion for summary judgment or for

judgment on the administrative record, Parents argue that the District's proposed IEP does not adequately address Jeremy's needs in reading, behavior, handwriting, and written expression. In regard to reading, they argue that the proposed IEP was substantially similar to Jeremy's fourth grade IEP under which Jeremy made little or no progress.  Parents further argue that the proposed Wilson Reading Program[2] is inadequate because the number of students in the reading group is too large and the amount of material each class will cover is not enough.  They also allege that the IEP did not adequately describe the reading comprehension program.  The Hearing Officer, however, found that the proposed IEP offered a highly structured program with ample time to address Jeremy's needs in a small group setting of three to six students and that no evidence suggested more was needed to allow Jeremy to make meaningful educational progress or to benefit from his instruction.  The H.O. further found that a Wilson trained professor teaches the comprehension strands used by the District which thus cures the Parents' coordination concerns in respect to the comprehension program.  The Appeals Panel found additionally that the proposed IEP was "sufficiently differentiated from the fourth-grade IEP."  In re Educational Assignment of J.G., Spec. Educ. Op., No. 1853 at 4.

---

[2] The Wilson Reading Program is a highly structured program used to teach students who have learning disabilities in reading and spelling.

9

After reviewing the evidence relating to the proposed reading program and giving due weight to the administrative findings of fact, this Court can point to no contrary extrinsic evidence on record to support a conclusion contrary to that of the H.O. and Appeals Panel.  Even if the Appeals Panel had found that the proposed IEP was not sufficiently differentiated from the fourth grade IEP and that the fourth grade IEP was inappropriate, the H.O. determined the appropriateness of the proposed IEP based on its own merits and not based in any part on those of the fourth grade IEP.  The H.O. also appropriately credited more weight to certain testimony of the District's witnesses than to that of the Parents' witnesses and properly disregarded evidence pertaining to observations occurring after the District created the proposed IEP.  Thus we agree with the H.O.'s determination that the reading program is reasonably calculated to provide Jeremy with meaningful educational progress.

In regard to behavior, Parents argue that the IEP should include a plan to address Jeremy's social, emotional, organizational, and attention-related behaviors.  The H.O. found that the District sufficiently sought information regarding Jeremy's social emotional functioning and that no evidence suggested that Jeremy needed social skills training or a behavior plan to make educational progress.  The H.O. also found that the

IEP adequately provided for intervention to address Jeremy's demonstrated social needs and for aid to assist Jeremy's transition back to public school as requested by Parents.

The evidence of record supports the H.O.'s conclusions on behavior and social/emotional skills and does not support a contrary conclusion.  The Evaluation Report indicated that Jeremy's Behavior Symptoms Index, which reflects overall behavior, fell within the average range.  Although Jeremy's self-report contained in the Evaluation Report indicated a pervasive pattern of dissatisfaction with schooling, school personnel, and the structure of the educational process, Jeremy answered the questions in relation to TQS and not in relation to the District school.  As the H.O. found, Parents offered no testimony that the Evaluation Report was flawed.  The Evaluation Report did state that the IEP should include a plan to ease Jeremy's transition back into the public school and the proposed IEP included such a plan.  The IEP also included interventions to address Jeremy's social needs, contact people for Jeremy to see if he is frustrated, agitated, or in need of support, daily opportunity for movement within the classroom to aid with Jeremy's ADHD, preferential seating to limit distraction, and daily encouragement, reinforcement, and praise from the teachers.  The H.O. found that the IEP adequately provided for Jeremy's behavioral and social needs that needed to be addressed and this

Court agrees.  No extrinsic evidence on record supports a contrary conclusion.  Although Parents' witness testified that Jeremy exhibited behavioral issues during the witness's observation at TQS, the H.O. was correct to discount this evidence because the observation occurred after the District created the IEP and did not support a finding that the IEP at the time it was made was unreasonable.

In regard to handwriting and written expression, Parents argue that the proposed IEP failed to provide specially designed instruction or appropriate modifications to enable Jeremy to make meaningful progress in these areas.  Parents also argue that the goals relating to written expression were poorly written and lacked baselines.  The H.O. found that the IEP indeed did not provide specially designed instruction to improve handwriting but that the handwriting goal referred to the skill being addressed in occupational therapy and that the IEP provided for small group occupational therapy for thirty minutes each week.  The H.O. also found that Jeremy's absence from the school district mitigated the lack of baselines for certain goals and that the school was aware of the need to provide these baselines once Jeremy returned.

After reviewing the record, we agree that Jeremy's attendance at TQS mitigated the District's failure to include certain baselines in the IEP.  The H.O. found that the baselines

would be created when Jeremy returned to the District and that the proposed IEP still provided for meaningful educational benefit.  We can point to no evidence on record to support a different conclusion.  Although the proposed IEP did not include specially designed instruction to aid Jeremy in meeting his handwriting goal, we agree that the lack of specially designed instruction did not render the IEP inadequate where the IEP provided thirty minutes each week for Jeremy to work directly with an occupational therapist addressing his handwriting and keyboarding needs.  The Evaluation Report recommended that Jeremy have the opportunity to use the classroom computers as needed and that occupational therapy be provided on a consultive basis and the IEP adequately responded to these recommendations.

   While we do find the proposed IEP to be reasonably calculated to provide meaningful educational benefit in writing and written expression, we believe Jeremy and his family would benefit even more if the District were to provide them with a more detailed description of techniques the occupational therapist plans to use with Jeremy, and we encourage the District to do so.

   We are mindful of the nature of our scope of review.  Again, the case law is clear that we must defer to and give due weight to the Hearing Officer's factual findings unless we can point to contrary non-testimonial extrinsic evidence on the record and

that we cannot substitute our own notion of sound educational policy for those of local school authorities.

After thoroughly reviewing the entire administrative record, which consisted of over a thousand pages in testimony alone, this Court agrees with the Hearing Officer and the Appeals Panel that the District's proposed IEP is reasonably calculated to provide meaningful educational benefit to Jeremy.  Although the Hearing Officer proposed certain modifications and clarifications, the Appeals Panel found that they were merely recommendations and that the proposed IEP without the suggested improvements, though not optimal, was appropriate.  After thoroughly reviewing the testimony of all of the plaintiffs' and the District's witnesses and finding no contrary documentary or other evidence, we likewise conclude that while the proposed IEP may not offer Jeremy the best possible education, it is nevertheless adequate to advance him a meaningful educational benefit.  We therefore must affirm the finding of both the Hearing Officer and the Educational Appeals Panel that the proposed IEP is appropriate.

In light of our finding that the proposed IEP adequately provides meaningful educational benefit, we find no need to address the burden of persuasion.

For all of the above-stated reasons, the Defendants' motion for summary judgment on the administrative record shall be granted while the Plaintiffs' motion for summary judgment shall

be denied pursuant to the attached order.

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


J.G. AND L.G., AS PARENTS        :
AND NEAREST FRIENDS OF           : CIVIL ACTION
JEREMY G.,                       :
                                 :
            PLAINTIFFS,          :
                                 :
                                 : NO. 08-CV-00734
                                 :
       vs.                       :
                                 :
ABINGTON SCHOOL DISTRICT,        :
                                 :
            DEFENDANT.           :
```

## ORDER

AND NOW, this   15TH   day of October, 2008, upon consideration of the Cross-Motions of the Parties for Summary Judgment or for Judgment on the Administrative Record (Docket Nos. 13, 14) and for the reasons articulated in the preceding Memorandum Opinion, it is hereby ORDERED that the Defendants' Motion is GRANTED, the Plaintiffs' Motion is DENIED and Judgment is entered in favor of the DEFENDANT as a matter of law on the administrative record and against the PLAINTIFF in no amount.

                              BY THE COURT:


                              S/J. CUTIS JOYNER
                              J. CURTIS JOYNER,      J.